UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Amanda R. Huddleston,

    Plaintiff,

v.                             Case No. 1:10cv713

Fresenius Medical Care           Judge Michael R. Barrett
North America, *et al.*,

    Defendants.

## ORDER

This matter is before the Court upon Defendant Magnum Plastics, Inc.'s ("Magnum") Motion to Dismiss. (Doc. 34.) Plaintiff Amanda R. Huddleston, executor of the Estate of Jeannie Mae Morgensen, filed a Response in Opposition (Doc. 44), and Magnum filed a Reply (Doc. 62). In addition, the parties filed supplemental memoranda after the Court permitted a period of discovery on the issue of personal jurisdiction. (Docs. 69, 70.) Plaintiff has filed a Stipulation under seal (Doc. 68), upon which she relies in her supplemental memorandum. This Stipulation is between Plaintiff and Defendant Fresenius Medical Care North America ("Fresenius").

Magnum moves to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

### I.    BACKGROUND

Plaintiff brings claims for wrongful death, product liability, survivorship and punitive damages on behalf of the decedent's estate. (Doc. 16, ¶ 1.) The claims arise from the use of two recalled dialysis devices which allegedly caused the death of the decedent. (Id.)

One of these devices is the Liberty Cycler Home Peritoneal Dialysis Device manufactured by Defendant Fresenius. (Id., ¶ 2.) Plaintiff alleges that Defendant Magnum "either in its United States facility of [sic] its Mexican facility manufactured the defective lots of or components for the LIBERTY® Cycler Sets supplied to Plaintiff's decedent and later recalled by Fresenius Medical Care after the death of Plaintiff's decedent." (Id., ¶ 15.) Fresenius' principle place of business is Waltham, Massachusetts. (Id., ¶ 8.)

Magnum is a Colorado corporation, headquartered in Erie, Colorado that specializes in complex, high precision injection molded components and assemblies in the medical component field. (Doc. 34-1, Cathy Cairns Aff., ¶ 2) Magnum is a contract manufacturing company, meaning it does not sell its products to the general public. (Id., ¶¶ 2, 4.) All of Magnum's business operations, including its manufacturing facilities, are located in Colorado. (Id., ¶ 2.) Magnum does not own property in Ohio. (Id., ¶ 5.) Magnum is not registered to do business in Ohio with the Secretary of State. (Id., ¶ 3.) Magnum does not have any customers located in Ohio, and no representative or employee of Magnum has ever traveled to Ohio on business. (Id., ¶¶ 2, 4.)

Plaintiff's claims against Magnum are based solely on diversity.[1]

## II. ANALYSIS

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for lack

---

[1] Plaintiff brings statutory product liability claims for defective manufacture and design pursuant to Ohio law against Fresenius and Magnum. (Doc. 16, at ¶¶65-77.) Plaintiff makes a statutory claim against Fresenius and Magnum under Ohio law for the alleged failure of the Liberty Cycler to conform to their respective representations. (Id., ¶¶ 87-91.) Plaintiff makes a supplier liability claim against Fresenius and Magnum under Ohio law. (Id., ¶¶ 92-96.) Plaintiff makes Ohio law wrongful death and survivorship claims against all Defendants. (Id., ¶¶ 115-121.)

of jurisdiction over the person. The plaintiff bears the burden of establishing that such jurisdiction exists. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). As the Sixth Circuit has recently explained:

> "[t]he weight of [the] burden . . . depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue. . . ." 875 F.2d 1212, 1214 (6th Cir. 1989). When the district court "rules on written submissions alone" the burden consists of "a *prima facie* showing that personal jurisdiction exists." *Id.*

*Schneider v. Hardesty*, 2012 WL 573321, *3 (6th Cir. Feb. 23, 2012). Here, the Court has not held an evidentiary hearing, and therefore, under the general rule, the *prima facie* standard would apply. However, the Court did permit the parties to conduct discovery on the issue of jurisdiction. As a result, this Court must question whether this case falls within the potential exception discussed in *dicta* in *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998). This exception arises in "those rare instances in which a plaintiff has been granted all discovery requested and that discovery resulted in an undisputed set of facts such that an evidentiary hearing would be pointless." *Schneider*, 2012 WL 573321, *4. This Court notes that the exception is not applicable because there are outstanding factual disputes in this case. The Court also notes that regardless of the standard applied, the result would be the same because Plaintiff has not met the less-demanding *prima facie* standard.

In a diversity case, this Court must first look to the law of the forum state to determine whether the exercise of jurisdiction is proper under the state's long-arm statute. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Next, this Court must determine whether the exercise of jurisdiction meets constitutional due process

-3-

requirements. *Id.* Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, the central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." *Id.* (citing Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998)).

Plaintiff claims that this Court has jurisdiction under two prongs of Ohio's long-arm statute:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>  . . .
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

Ohio Rev.Code Ann. § 2307.382(A). To support her position, Plaintiff relies on the Stipulation between her and Fresenius, in addition to a complaint filed by Fresenius against Magnum in the United States District Court for the District of Colorado.[2] Specifically, Plaintiff explains that in 2009, Magnum's Liberty cassettes were distributed to thirty-two dialysis clinics and 143 patients in Ohio. (Doc. 68, ¶ 10.) Plaintiff explains further that in

---

[2]Magnum points out the complaint filed by Fresenius against Magnum in the United States District Court for the District of Colorado contains mere allegations.

-4-

2009, Magnum invoiced Fresenius $731,862.80 for the manufacture and supply of cassettes. (Id., ¶ 9.)

The Court finds that this evidence is unavailing. Plaintiff only provides numbers for the year 2009. There is no evidence that Magnum supplied the cassettes to Fresenius any other year. The most Plaintiff has is an allegation from Fresenius' Colorado complaint that from March 15, 2006 to September 15, 2009, Magnum supplied Fresenius with 100% of its Liberty Cycler Set cassettes. However, there is no allegation or evidence that any of these cassettes were distributed in Ohio at any other time other than the year 2009. The Amended Complaint in this case only alleges that Magnum manufactured the defective lots or components which were supplied to the decedent. (Doc. 16, ¶ 15.) While Plaintiff claims that the cassettes manufactured by Magnum during the period 2006 to 2009 were distributed to clinics and patients in Ohio, Plaintiff merely relies on a list which appears to be those clinics subject to the Fresenius recall in 2010. (Doc. 68, at 36.) This provides little information as to whether Magnum "regularly does or solicits business" in Ohio.

Furthermore, Plaintiff only provides the total amount Magnum invoiced Fresenius in 2009–$731,862.80–but does not explain what percentage of this amount was attributable to sales in Ohio, or whether this amount represents a substantial proportion of Magnum's overall revenue.

Also missing from the record are allegations or evidence that Magnum has a physical presence in Ohio. *See Estate of Poole v. Grosser*, 731 N.E.2d 226, 229-230 (Ohio Ct. App. 1999) (explaining that "a plaintiff may prove a regular doing or solicitation of business by showing that a nonresident corporation has maintained an office in Ohio or employed a sales or service force in Ohio."). Without this information, the Court is unable

to conclude that Magnum "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in Ohio.

Therefore, Plaintiff has failed to carry her burden of establishing that it is proper for this Court to exercise personal jurisdiction over Magnum under Ohio's long-arm statute.

Even if Ohio law authorized jurisdiction, Plaintiff has also failed to show that the exercise of jurisdiction over Magnum comports with due process. To comport with due process, an exercise of personal jurisdiction requires that a defendant "have certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general. *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007), *citing Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994).

General jurisdiction is established "when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006). For example, in *Michigan National Bank v. Quality Dinette Inc.*, 888 F.2d 462, 466-67 (6th Cir. 1989), the exercise of general jurisdiction was proper where the defendants retained an independent sales representative in Michigan, conducted mail order solicitations in Michigan, and made at least one sale in Michigan each and every month over the course of a two-year period. Plaintiff has failed to show that Magnum has

similar "continuous and systematic contacts" with Ohio, and therefore the exercise of general jurisdiction is not proper in this case.

Specific jurisdiction exists in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). Specific jurisdiction may be premised on a single act of the defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222 (1957). The Sixth Circuit has established a three-part test to govern whether a defendant is subject to specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Each criterion must be satisfied for a court to find its jurisdiction consistent with due process. *Id.*

Under the *Southern Machine* test, this Court first must determine whether Magnum purposefully availed itself of "the privilege of transacting business" in Ohio. *Id.* at 382. To make this determination, the Sixth Circuit has adopted Justice O'Connor's "stream of commerce 'plus'" approach, set forth in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987). *See Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 479 (6th Cir. 2003). Under this approach, "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* (quoting Asahi, 480 U.S. at 112).

The "stream of commerce" theory was recently addressed by the Supreme Court

in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011). The defendant in *J. McIntyre* was a foreign manufacturer who sold its machines to a distributor who agreed to sell them in the United States. Several of these machines ended up in New Jersey, where they allegedly caused injuries. The record showed that defendant had displayed its machine at trade shows in the United States, but not in New Jersey. The defendant had no office in New Jersey, did not pay taxes in New Jersey, did not own property in New Jersey, never sent employees to New Jersey, and never advertised in New Jersey.

In the plurality opinion, Justice Kennedy explained that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 2788. The plurality decided, based on the facts, that there was no personal jurisdiction over the defendant because it did not "engage in any activities in New Jersey that reveal [ed] an intent to invoke or benefit from the protection of its laws." *Id.* at 2791.

However, because no opinion in *J. McIntyre* commanded five votes, Justice Breyer's concurrence controls. Justice Breyer rejected the plurality's holding that mere foreseeability that goods could wind up in a particular state could never form a constitutionally sufficient basis for the exercise of personal jurisdiction under the stream-of-commerce theory. *Id.* at 2791–93. Instead, Justice Breyer found the specific facts of the case insufficient to support personal jurisdiction even under the Court's earlier precedents, emphasizing that the defendant had made only a "single isolated sale" through an independent distributor into the forum state. *Id.* at 2791–92. Justice Breyer's

concurrence did not foreclose the possibility that a court might exercise jurisdiction where there is a "regular course of sales" of defendant's goods in the forum state, or "something more, such as special state-related design, advertising, advice, marketing or anything else." *Id.* (internal quotations omitted).

This Court concludes that the facts of this case cannot support a finding of purposeful availment. The Court finds that it is unnecessary to address the remaining two prongs of the *Southern Machine* test because all three prongs of the test must be met in order for the exercise of personal jurisdiction to be appropriate. *Southern Machine*, 401 F.2d at 381.

### III. CONCLUSION

Based on the foregoing, Defendant Magnum Plastics, Inc.'s Motion to Dismiss. (Doc. 34) is hereby **GRANTED**. Because this Court does not have personal jurisdiction over Defendant Magnum, it is dismissed as a party from this case. However, dismissal of the claims against Magnum are **WITHOUT PREJUDICE**. *See Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005) (dismissals for lack of personal jurisdiction should be made without prejudice).

**IT IS SO ORDERED.**

                                                */s/ Michael R. Barrett*
                                                Michael R. Barrett, Judge
                                                United States District Court